## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INTERNATIONAL DECISION STRATEGIES, INC.,** ) <br> 8810B Pear Tree Village Court ) <br> Alexandria, Virginia 22309 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **THE REPUBLIC OF EQUATORIAL GUINEA,** ) <br> c/o The Office of the President of the Republic, ) <br> Malabo, Equatorial Guinea, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. _____ |

### COMPLAINT
(for breach of contract or, in the alternative, *quantum meruit*)

### Nature of the Action

1.    This is an action for breach of a commercial contract between, on the one hand, Plaintiff International Decision Strategies, Inc. ("IDS"), a company providing consulting services, and Defendant The Republic of Equatorial Guinea ("EG"), on the other, a foreign state within 28 U.S.C. § 1603.

### Jurisdiction

2.    This Court has jurisdiction over the subject matter of this action by virtue of 28 U.S.C. §§ 1330(a) and 1605(a)(2), insofar as the contract whose breach is alleged herein constituted a commercial activity of Defendant carried on in the United States.

### Parties

3.    Plaintiff International Decision Strategies, Inc., is a Virginia corporation and a service-disabled veteran-owned small business within the meaning of 13 C.F.R. Part 125, with headquarters at 8810B Pear Tree Village Court, Alexandria, Virginia 22309.  It is in the business of

providing strategic advice to foreign governments, international organizations, and embassies in the United States.

4.      Defendant EG is a sovereign state located in West Africa. It is a member of the United Nations, and is fully recognized by the United States. Its Embassy is at 2020 16th Street, Washington, D.C. 20009.

**Venue**

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

**Facts**

6.      The working relationship between IDS and its representatives (R. Bruce McColm and Joseph Balcer) and the EG Government dates back to at least 1996. For many years, Mr. McColm worked with and advised the EG delegation at the UN Human Rights Council (formerly the Human Rights Commission) in Geneva, headed by Minister of Justice and Religious Affairs Ruben Maye Nsue Mangue. Later, Mr. McColm continued to advise Mr. Maye in his capacity as Minister. All of this work was consistently compensated in full, in accordance with the parties' agreements.

7.      In May 2013, Mr. Maye was appointed Ambassador to the United States. Before the formal announcement of that appointment, Teodoro Obiang Nguema Mbasogo, President of the Republic of Equatorial Guinea, personally asked IDS to assist the new Ambassador in adjusting to his new environment, in navigating through the Washington bureaucracy, and in whatever substantive policy matters might be on the Ambassador's agenda.

8.      From that day forward, Plaintiff acted in myriad ways to be of assistance to Ambassador Maye. The advice and counsel of IDS were sought by the Ambassador and were provided to him on a virtually daily basis, on a wide variety of topics.

9.     For example, IDS helped the Ambassador to find temporary living arrangements for him and his family of eleven while the residence was being repaired, including acquiring furniture and other necessities. It also reviewed and advised on contracts and proposals and evaluated projects presented to the Ambassador by third parties for his consideration. It provided substantial advice to Ambassador Maye on the best uses of President Obiang's time while he was in Washington for the African Heads of State Summit in August 2014. In addition, it reviewed and analyzed reports by non-governmental organizations about Equatorial Guinea, and made suggestions to the Ambassador regarding responses to those reports and to articles appearing in the media.

10.    The President was fully aware of the extent of Plaintiff's activities on behalf of the Ambassador and the country. Indeed, in addition to their work for the Embassy, IDS prepared written statements, remarks, and speeches for the President, First Lady, Foreign Minister, and other senior EG officials for delivery at the Equatorial Guinea Economic Forum held at the St. Regis Hotel the day after the Summit concluded.

11.    A non-exhaustive list of the activities performed by IDS for the Government and Embassy of EG between May 2013 and August 2014 is attached as Exhibit A. All of these were performed at the request of Ambassador Maye or one of his superiors in Malabo, and all of them provided direct benefit to the Government and Embassy of EG.

12.    Ambassador Maye was recalled in August 2014. The new Ambassador, H.E. Miguel Ntutumu Evuna Andeme, presented his credentials to President Obama on February 23, 2015.

13.    On August 8, 2014, IDS presented the Embassy with an invoice in the amount of $1.2 million. *See* Exhibit B (the original invoice in Spanish with an English translation). Although all of the other work performed by Plaintiff for Defendant since 1996 had been paid in full, for the first

time, Defendant has failed to pay any portion of the August 2014 invoice reflecting work it had done over the previous 15 months.

14.     In August 2014, while he was in Washington for the African Summit, Messrs. Balcer and McColm met with President Obiang. The President assured them that their bills for all of their services would be paid, and that they would be treated "generously."

15.     The President's promise has not been honored. A letter to the President (*see* Exhibit C), and informal approaches to the Embassy and to contacts IDS developed in Malabo have not caused Defendant to pay its contractual debts, or otherwise to compensate IDS for the work done in its behalf.

### Count One:  Breach of Contract

16.     The allegations set forth in ¶¶ 1-15, *supra*, are incorporated herein by reference.

17.     At all times relevant hereto, and in particular between May 2013 and August 2014, there existed an implied contract between IDS and EG ("the Contract") whereby the former was to provide professional consulting, advice, and services to the Embassy and Government, and the latter was to pay Plaintiff's reasonable fees and expenses, in line with the charges incurred and paid for earlier work done by IDS and its representatives for EG.

18.     The Contract was for purely commercial activities carried on by Defendant in the United States, in the performance or non-performance of which Equatorial Guinea is not entitled to sovereign immunity, as provided in 28 U.S.C. § 1605(a)(2).

19.     IDS performed its contractual obligations in full and in a manner completely conforming to the requirements of the Contract.

20.     EG, however, has not paid IDS for its services, as the Contract required.

21.     Wherefore, Equatorial Guinea remains indebted to IDS in the amount of $1.2 million. IDS prays judgment in that amount as breach-of-contract damages, together with pre- and

post-judgment interest as provided by law, and the costs of bringing this action, including reasonable

attorneys' fees.

### Count Two:  *Quantum Meruit*

22.     The allegations set forth in ¶¶ 1-15, *supra*, are incorporated herein by reference.

23.     In its performance of their obligations under the Contract, IDS provided Equatorial

Guinea with value in the amount of $1.2 million, in the form of professional advice and services, as

set out herein and in Exhibit A.

24.     IDS has demanded payment for its services, *inter alia* in reliance on express

undertakings made by the most senior officials of the Equatorial Guinean Government.  Those

demands for payment have not been honored.

25.     Wherefore, Equatorial Guinea remains indebted to IDS in the amount of

$1.2 million.  IDS prays judgment in that amount in *quantum meruit* damages, along with pre- and

post-judgment interest as provided by law, and the costs of bringing this action, including reasonable

attorneys' fees.

### Conclusion and Prayer for Relief

26.     For all of the foregoing reasons, Plaintiffs International Decision Strategies, Inc.,

respectfully prays that this Honorable Court:

> a)  ASSUME jurisdiction over this action, pursuant to 28 U.S.C.
>     §§1330(a) and 1605(a)(2);
>
> b)  DECLARE that the failure of the Republic of Equatorial
>     Guinea to pay its fees constitutes a breach of an implied
>     contract with Plaintiff;
>
> c)  ENTER judgment, against EG and in favor of IDS, for
>     breach-of-contract damages in the amount of $1.2 million;
>
> d)  Alternatively, AWARD to IDS and against Equatorial Guinea
>     judgment for *quantum meruit* damages in the amount of $1.2
>     million;

    e)  GRANT IDS pre-judgment interest on the damages award, as from the date the unpaid debt became due and payable;

    f)  AWARD to IDS the costs of bringing this action, including reasonable attorneys' fees; and

    g)  GRANT to IDS such additional relief as to the Court shall seem just and proper.

Respectfully submitted,

Steven M. Schneebaum
    D.C. Bar No. 956250
Arin Melissa Brenner

Steven M. Schneebaum, P.C.
2131 S Street, N.W.
Washington, D.C. 20008
Tel.: 202-742-5900
Email: sms@smslawdc.com

Counsel for Plaintiff

Dated:  March 6, 2015

Exhibit A

**Activities of International Decision Strategies**
**in Support of the Embassy and Government of Equatorial Guinea**
**May 2013 to August 2014**

1. In May 2013, IDS oversaw obtaining furnished residential accommodation for Ambassador Maye and his family, negotiated the lease of a temporary residence, and purchased furniture and supplies on his behalf so the Ambassador could begin work immediately on his arrival.

2. IDS, as part of the Ambassador's "kitchen cabinet" (as he called it), reviewed and advised on the Embassy's strategy to achieve the President's agenda of strengthened bilateral relations between Equatorial Guinea and the United States, including identifying specific initiatives the Ambassador should take to advance that agenda..

3. IDS evaluated and made recommendations to the Ambassador on what actions his Government should take in response to the U.S. State Department's report on Human Trafficking. IDS conferred with international human rights experts, including the World Bank section dedicated to human trafficking, representatives of the OAS, and professors at American University to discuss educational programs the EG Government could provide to detect and to prevent human trafficking.

4. To prepare him to respond to questions from U.S. officials and others, IDS provided the Ambassador with an analysis of the issues surrounding reporters who had been invited into the country by the Government, yet whose laptops were confiscated by the authorities, allegedly because they had interviewed an opposition leader.

5. IDS met with the visiting delegation of the Senate of Equatorial Guinea, and discussed plans for a conference on the rights and responsibilities of citizens under the new Constitution.

6. IDS debriefed the Ambassador on the main points of a Human Rights Watch report on improving EG's human rights record, including addressing reactions by the State Department. Primary areas for improvement that were discussed included freedom of the press, registration of NGOs, registration of political parties and their right to have their own media outlets, freedom of association, and freedom of speech.

7. IDS consulted with international experts and constitutional lawyers, including legal scholars from Costa Rica, Colombia, Spain, and Mexico, about participating in seminars on the new Constitution of Equatorial Guinea.

8. IDS met with internationally-respected legal scholars about participating in a proposed series of seminars on "Citizen Rights and Responsibilities." These included internationally-known experts on human rights law and also on the African system of People's Rights.

9. IDS reviewed and evaluated numerous proposals submitted to the Ambassador, including but not limited to the following, and made recommendations to him on which the Government should pursue (and how):

   - From the Port of Miami for an exchange of technical experts.
   - From Ambassador Herman J. Cohen, former Assistant Secretary of State for African Affairs, concerning the modernization of power plants in the country for distribution of electricity to EG's neighbors.
   - From a global marketing company to send 12-15 African-American journalists to Equatorial Guinea to promote Heritage Tourism.

1

- From the University of North Carolina Technical Institute to train Equatoguineans in agriculture.

10. IDS reviewed and recommended to the Ambassador that he pass to the appropriate Minister a proposal for four major telecommunications projects involving broadband and associated content, using Broadband over Power Line and other technologies.

11. IDS prepared talking points/drafts for several of the Ambassador's speeches to and interviews with business and legal groups in D.C., including one marking the 45th anniversary of the country's independence, on the general topic of the President's 20/20 Vision for economic and social development of EG and what had been achieved to date.

12. IDS prepared talking points for the Ambassador's presentation to the Equatorial Guinea Working Group, focused on President Obiang's stated intent to diversify the economy.

13. IDS prepared talking points for the Ambassador's television interview on Equatorial Guinea as a model for development, emphasizing those steps taken by the government to improve and expand education, health care, and other social services.

14. IDS reviewed the World Bank analysis of Equatorial Guinea's economy, and made recommendations on specific steps the Ambassador should take to counter inaccurate information, and to shape perceptions of the country based on correct substantive data collection and analysis.

15. IDS researched and proposed solutions to the Embassy's banking problems. Specifically, after conferring with legal counsel, IDS proposed that it open a special bank account in its own name. The EG Treasurer could then wire funds into the Special Account and the Ambassador would direct IDS to make payments on behalf of the Embassy (IDS would not pay out any of the Embassy's funds without written authorization from the Ambassador).

16. IDS reviewed a list of U.S. Government officials for President Obiang and his Ministers to meet during the African Heads of State Summit. IDS made suggestions for the President's agenda while he was in Washington.

17. IDS prepared speeches for the President, the Foreign Minister, and the Ambassador, for presentation at the Equatorial Guinea Economic Forum held in Washington immediately following President Obama's Summit.

18. After meeting with Embassy staff to understand their information technology requirements, IDS identified a respected full-service IT provider to assess the needs of the Embassy and the Ambassador's residence relating to hardware, software, networking, and data security.

19. IDS edited the greetings statements of President Obiang and the First Lady for the Heads of State Summit for inclusion in the package of printed materials distributed to Summit participants.

20. In general, IDS was available to the Embassy and to the Ambassador at all times, and consulted and offered advice on myriad issues, including in particular coordination with U.S. policy with respect to piracy in the Gulf of Guinea, relations with the political opposition, and dealing with the mass media in the United States.

# Exhibit B



 International Decision Strategies, Inc.

## FACTURA #2014-043

8 Augusto 2014

Su Excelencia Obiang Nguema Mbasogo
Presidente de Guinea Ecuatorial
Malabo
Equatorial Guinea

**RE:** Las actividades llevadas a cabo en nombre de la Embajada de Guinea Ecuatorial en los
Estados Unidos

**Fechas de ejecución:** Mayo 2013-Augusto 2014

**TOTAL A PAGAR:**  US$1.200.000,00

_____
Joseph Balcer, President

8810B Pear Tree Village Ct. Alexandria. VA 22309 USA
TEL (703) 739-4224   FAX (703) 373-2024
decisions@ids-us.com

**International Decision Strategies, Inc.**

**INVOICE #2014-043**

August 8, 2014

His Excellency Obiang Nguema Mbasogo
President of Equatorial Guinea
Malabo
Equatorial Guinea

**RE:** Activities carried out in the name of the Embassy of Equatorial Guinea in the United States

Dates of performance: May 2013 – August 2014

TOTAL TO PAY:  US$1,200,000

_____

Joseph Balcer, President

8810B Pear Tree Village Ct., Alexandria, VA 22309 USA
TEL.: (703) 739-4224    FAX: (703) 373-2024
decisions@ids-us.com

Exhibit C



August 25, 2014

His Excellency Obiang Nguema Mbasogo
President
The Republic of Equatorial Guinea
Bata, Equatorial Guinea

Dear President Obiang:

It has been my pleasure to provide assistance to the Government of Equatorial Guinea for nearly 19 years. From electoral assistance to the United Nations Human Rights Council, I have seen the difficult international environment in which the country operates. You, personally, should be congratulated on the amazing progress the country has made over this time.

American officials were pleased that you stayed the entire time for the U.S.-Africa Leaders Summit. You yourself saw what a success the Equatorial Guinea Investment Opportunities Forum was. We have never seen such a forum for one country so well attended. One barometer of its success was the Spanish press printing articles about how Equatorial Guinea is not a country for investment.

The next couple of years are critical for you to consolidate your legacy and ensure that the development of Equatorial Guinea is sustainable into the future. The United States is a young country and not patient. The Administration will expect the Government of Equatorial Guinea to make good faith efforts on your promise to begin discussions with the "so-called" opposition abroad and to make progress in specific areas of human rights. We are prepared to assist you in these matters.

Since you asked in May of 2013 for my colleagues and me to assist Ambassador Ruben Maye Nsue Mangue with his duties here in Washington, D.C., we have enabled him to make substantial progress in deepening ties between our two countries. However, considerable effort still needs to be made in building a network of public and private institutions that can provide Equatorial Guinea with technological expertise and support.

We would like to continue this work, for which we have expended a considerable amount of our own funds in the past 15 months. As you promised in our recent meeting, in Washington, to be "generous" in the settlement of our outstanding claims, we look forward to a rapid resolution of this matter. We also hope for timely approval of the new contract to support the Ambassador in the coming years. Thank you for your attention to these urgent matters.

My Best Regards,

R. Bruce McColm